### H. and N. WEED *v.* SMULL and MILES.

### SMULL and MILES *v.* H. and N. WEED.

A receiver in a judgment creditor's suit, is entitled to the debtor's things in action, in preference to one who purchased the same with notice of the suit, after the bill was filed, and efforts made to serve the subpœna to answer. This was held, although there had been only slight diligence used to effect the service; there being no collusion or concealment.

The title of a receiver thus acquired, is a valid bar to a suit in equity by the purchaser of such things in action, against the party indebted to the judgment debtor.

A cross bill, which seeks no discovery, and makes no defence which was not equally available, by way of answer to the original bill; will be dismissed with costs.

October 23, 24, 1845; February 5, 1846.

THE circumstances under which these suits came before the court, are stated in the opinion delivered. It is proper to add, that after the receiver became vested with Hezekiah Weed's things in action, he compromised with Smull and Miles, for the claim of Weed prosecuted in his original suit against them, and which Nathaniel Weed sought to continue in the supplemental suit first above entitled. A great mass of testimony had been taken in H. Weed's original suit; the compromise was for a small per centage of the sum claimed by him to be due; and H. and N. Weed insisted, that it was collusive and fraudulent. On the other hand, Smull and Miles in their answer to the supplemental bill, set up the proceedings by which H. Weed's claim became vested in the receiver, and the compromise and discharge of the receiver, as a bar to the suit.

Both parties took testimony at large, on this part of the case. Smull and Miles also filed a cross bill, setting forth the same matters in substance.

*B. W. Bonney,* for Hezekiah and Nathaniel Weed.

*E. Norton* and *C. T. Cromwell,* for Smull and Miles.

THE ASSISTANT VICE–CHANCELLOR—The first bill is one of revivor and supplement, and its object is, to continue for the benefit of N. Weed, a suit prosecuted by H. Weed against Smull and Miles, for the recovery of a claim ; H. Weed having assigned the claim to N. Weed, *pendente lite.* And the defence is, that the title of H. Weed to this claim, became vested in a receiver appointed by this court, and that it did not vest in N. Weed by H. Weed's voluntary assignment.

It appears that John Purchase, filed a judgment creditor's bill against H. Weed, in October, 1841, in which the subpœna to answer and the usual injunction, were served on the 16th of November, 1841. On the 17th of the same month, Charles Kent filed a similar bill against H. Weed, and a subpœna and injunction were issued the same day. Efforts were made to serve them, but without much diligence, and they were not served until early in January, 1842.

On the 27th of December, 1841, N. Weed agreed with H. Weed, to pay off the debt and costs in Purchase's suit, provided H. Weed would assign to him this claim against Smull and Miles. He paid Purchase accordingly on the 29th or 30th of December, and H. Weed, on the 30th of December, executed to him such assignment. The suit of Kent was prosecuted to a decree. A receiver therein was appointed, and H. Weed assigned all his effects to the receiver, pursuant to the usual order of the court. The receiver subsequently compromised the claim in question, with Smull and Miles.

These are the outlines of the case, so far as I deem it necessary to enter into it on these pleadings.

One point was very much controverted in the testimony, and at the hearing, viz : whether N. Weed was informed of the filing of Kent's bill, before he paid the debt and costs to Purchase. I shall not attempt to reconcile the discrepancy in the testimony as to the date of that payment, for I think it is fixed by undisputed facts. The answer of the Weed's to the cross bill states explicitly, that the money for the payment to Purchase, was advanced by N. Weed, *at or immediately after the execution and delivery of the assignment.* This must be taken as conclusive, that it was not advanced before the assignment was executed.

Harvey A. Weed is positive that the assignment was drawn on the 29th day of December, and that it was executed at his father's house by H. Weed on the 30th of December, in the evening. On that day, H. A. Weed was notified in writing of the filing of Kent's bill, and he informed his father of it as early as the middle of the afternoon. If he had omitted to inform N. Weed, he was N. Weed's solicitor in that transaction, drew the assignment, negotiated with Purchase, and paid the money for his father; so that notice to him would probably be equivalent to notice to N. Weed. (See *Kennedy* v. *Green*, 3 M. and K. 699.)

N. Weed, therefore paid the money with notice of Kent's suit, and was chargeable with notice of its objects.

It is insisted, however, that the filing of Kent's bill did not create a *lis pendens*, or give him any lien upon H. Weed's things in action, as against N. Weed, until the service of the subpœna and injunction on H. Weed. Without deciding whether the attempts made to serve the subpœna, were sufficient to create a *lis pendens* against strangers, I am satisfied that the filing of the bill, and those attempts, were fully sufficient to give the creditor a lien as against H. Weed, and every person taking an assignment from him, with notice of the proceedings. The judgment of the Chancellor in the case cited by Weed's counsel, (*Hayden* v. *Bucklin*, 9 Paige, 512,) concedes throughout, that if the parties in that case had been notified of the filing of the bill and issuing the subpœna, before the assignment was executed, it could not have been upheld.

N. Weed having advanced his money with notice, is in no better condition than if he had taken an assignment to provide for a precedent debt. If Kent's suit were shown to have been collusive, the case would be wholly different. But I perceive no good reason for suspecting that it was collusive. Admitting that the proceedings after the receiver obtained this claim, were all that Mr. Weed's counsel charges upon them, (as to which I am not called upon to express any opinion,) the small amount of the Kent judgment, and the repeated calls on H. A. Weed to pay it, preclude the supposition that there was any intentional concealment of the suit, or delay in serving the subpœna. If

the suit were prosecuted in the hope that it might result in extinguishing H. Weed's claim against Smull and Miles, it proves no fraud. Kent's judgment was a valid debt, no step was taken to enforce it which was not strictly proper, and a payment of the debt and costs, would at any time have put an end to the possibility of realizing such hope. The delay in serving the subpœna, is satisfactorily explained, by the circumstance that the injunction in favor of Purchase, restrained H. Weed from parting with any property, and by the solicitor's reasonable expectation of meeting with him, as he had done on former occasions.

My conclusion is, that Kent had acquired an equitable lien upon the claim in question, before it was assigned to N. Weed, which was valid against the latter, taking his assignment with notice of Kent's proceedings; and that the receiver in Kent's suit, became vested with such lien, and with all H. Weed's title to the claim.

This defeats the title set up by Mr. Weed in his bill of revivor, and that bill must be dismissed with costs.

I think the cross bill should not have been filed. It seeks no discovery, and makes no defence which was not equally available by the answer to the original bill. With this view of it, I must decline to investigate the angry controversy which grew out of it, in respect of the acts of the receiver.

The cross bill must be dismissed, with costs to the defendants to the putting in of their answer, and the costs of a hearing as upon bill, answer and replication. I omit the intermediate costs, because they relate almost exclusively to the receiver's proceedings.

Decree accordingly.