RAWLS *v.* THE STATE, 8 Smedes & Marshall, 599.

### EXHIBITING FARO BANK.

When the judge of the circuit court refuses to sign a bill of exceptions, it may be signed by two of the attorneys of said court, and be in compliance with the statute.

A plea in abatement that the indictment was found by men who were not a part of the original panel, is good, and should be received; and on the trial of the plea it is competent for the defendant to read in evidence the original *venire,* for it is conclusive proof on the point.

A record is conclusive evidence, but what is, or what is not a record, is matter of evidence, and may be proved like other facts.

Incompetency of the grand jury may be pleaded in abatement, and if true it will defeat the indictment.

There is no law which authorizes the court to take substitutes for any portion of the regular panel.   If it can for one, it can for the whole.   And if the court do re-

[1] *Vide* note 1, p. 367.

ceive substitutes, the indictment found by them will be quashed by plea in abatement.

When a plea in abatement to an indictment is demurred to, and the demurrer overruled, the judgment of the court should be that the indictment be abated.

Error to Warren circuit court, COALTER, J.

The opinion of the court contains a sufficient statement of the facts of the case.

*E. G. Walker* for plaintiff in error.

1. It was error to exclude (upon the trial of the plea in abatement) the writ of *venire facias,* and the testimony of the witnesses offered by the defendant. The plea was a good defense in avoidance of the indictment, and evidence in support of it should have gone to the jury. 4 Bac. Abr., 525, 530, tit. A; 1 Chitty Cr. Law, 309, note 83; 6 Binn., 447; 2 Pick., 563; 5 Porter, 130, 447; 4 Dev., 305; 7 Leigh., 747; 7 Yerger, 271; 4 Black. Com., 302, 306, and notes.

2. It was error to strike out, on motion, the plea of misnomer. The plea was a good defense, but if defective in any way the district attorney should have demurred to it specially, setting forth specifically the causes of demurrer. 1 Chitty Cr. Law, 202; 1 Pick., 388; 3 ib., 262, 263; 2 Chit. R., 335; 11 East., 83; 5 Porter, 236; 3 N. H., 31.

3. The court erred in sustaining the plea in abatement, which averred that six of the grand jurors, who found returned into court, the indictment, had been substituted by the court for six of the regular *venire.* For neither at common law, nor by statute, can jurors be summoned or selected by the judge, but must be summoned by the sheriff or his legally authorized deputy. 4 Bac. Abr., 530, tit. Jury, A; 1 Chitty Cr. Law, 310; Commonwealth v. Barry, Hardin's R., 229; H. & H. Dig., 450, §§ 44, 45, 46, 48, 49, 68, 69. See also § 11 of Bill of Rights, Const. of Miss.

4. There was error in the judgment. The defendant was sentenced to imprisonment in the penitentiary, when, according to the act of 1839, he should only have been fined. H. & H. Dig., 680, 683.

*G. S. Yerger* on same side.

1. The indictment is returned a true bill, but is not signed by

the foreman.   The law requires the endorsement on the indict-ment, that it is a true bill, and signed by the foreman.   H. & H., 487, 492; Nomaque v. People, 1 Breeze, 109; Webster's case, 5 Greenl., 432; *Dictum Contra*, State v. Calhoen, 1 Dev. & Batt., 374; also, 1 Nott & McCord.

2. The plea of misnomer was a good plea in abatement.   1 Chitty Cr. Law, 202; Bac. Abr., Misnomer, A; Commonwealth v. Perkins, 1 Pick., 388; Commonwealth v. Hall, 3 Pick., 262, 263; 3 N. H., 31, 36; 1 Marsh. R., 477, or 4 Eng. C. L. R.; 2 Chitty R., 335, or 18 Eng. C. L. R.

The case in 5 Johns., 84, was not a criminal case; it was a question of variance, and moreover it is not supported by any authority.   It asserts that a man can have but one Christian name.   That is true; but John J., James J., John Thomas, etc., constitute but one Christian name.   The authority in Co. Litt. does not support it.   See 3 Co. Litt., 3 a.

3. The plea in abatement alleging that the court discharged the grand jurors of the regular *venire*, and substituted other persons in their stead, was sufficient to abate the indictment. H. & H. Dig., §§ 44, 45, 46, 48, 49, 68, 69; Chitty Cr. Law, 309, 310; 7 Yerger R.; 5 Porter, 130; 7 Leigh, 747; 4 Dev., 305; 2 Pick., 550; 3 Blackf., 37; 6 Binn., 447; 6 S. & M., 680; 3 How., 27; 1 Blackf., 318.

4. The fact that it is stated in the record that the grand jury was composed of good and lawful men, does not preclude proof to show they were not, upon the trial of a plea in abatement alleging the contrary.

5. If an indictment concludes contrary to the statute it is de-fective.   Archbold's Cr. Law; State v. Paul, 2 Dev., 202.

*J. D. Freeman*, attorney general.

Sharkey, C. J.:

To an indictment for having exhibited a faro bank, the ac-cused filed three pleas in abatement, two of which go to the competency of the grand jury who found the indictment, and the other is a plea of *misnomer*.

The first plea is that six of the grand jurors were not legally qualified to serve, inasmuch as they had not been drawn by the

clerk and sheriff in either of the modes prescribed by law from a list of freeholders and householders, returned by the assessor, nor had they been summoned as persons liable to serve on juries by virtue of a special writ of *venire facias*, nor were they summoned as tales jurors, nor had the regularly summoned jurors failed to attend, nor had the panel been exhausted, nor were they summoned from the by-standers. The plea is full and specific in stating, that these grand jurors were not summoned and empanelled in any mode prescribed by law. The district attorney took issue.

The second plea to the competency of the grand jury is in substance, that the six persons named in the first plea, were substitutes, who were received by the court to serve in place of so many of the jury summoned under the *venire*, and who were there in attendance on the court, and who had procured the six persons to serve in their places. To this plea, there was a demurrer which was sustained.

On the trial of the issue taken on the first plea, certain evidence was offered and ruled out, to which the accused excepted, but the court refused to sign the bill of exceptions, and it was signed by two attorneys of the court. The sufficiency of the bill of exceptions, as a preliminary question, is denied, but it seems to have been signed in strict accordance with the statute; it states that the judge refused to sign it, and also that the persons who did sign it, were practicing attorneys of the court, and present at the trial. The question then arises, was the evidence properly ruled out? The defendant offered to read the original *venire facias*, returnable to the April term, 1845, together with the sheriff's return. If this evidence was relevant, it was surely competent. It was the process of the court, and competent to prove any fact stated on its face, if such fact was in issue. The defendant pleaded, that six of the grand jurors, who found the indictment, were not competent, not having been drawn and summoned according to law. On this plea issue had been taken. If the names of the objectionable persons did not appear in the *venire*, the first point in the plea was established. This made it manifest, that they had not been summoned under the original *venire facias*, and after establishing that fact, if by

other proof it could be shown, that they had not been summoned
according to either of the other modes provided by law to sup-
ply a deficiency caused by the non-attendance of a sufficient
number of the original panel, the defence was made out. The
process was not inadmissible because it contradicted the caption
of the record, which had been read by the district attorney. The
caption, after reciting the term of the court, proceeds in these
words: "A grand jury of inquest for the body of this county,
was drawn and empanelled from the regular *venire*, viz., Joseph
N. Craddick, etc.," beginning the list with the name of one
of the persons named in the plea, as having been irregularly em-
panelled. No such name is found in the process, which was the
foundation of the record, and no record could be true, which
did not follow it. One or the other was untrue, and as the pro-
cess was referred to as furnishing the names of the persons men-
tioned in the recital or caption, it must control, and prove that
the caption was untrue. By the plea, it is said, that the indict-
ment was found by men, who were not a part of the original
panel, and the *venire* was conclusive proof on this subject, and
ought to have been received.

The defendant next offered to prove by Henry Green, who
was deputy sheriff, and the court officer, that when he called the
list of jurors regularly summoned, a sufficient number answered
to their names, and were present in court, to constitute a grand
jury, and that the six persons mentioned in the plea were, by
the order of the judge, substituted for six of the regular panel,
who were then in attendance, who had brought in their substi-
tutes and tendered them, whereupon the court received the sub-
stitutes and discharged the original jurymen, and the witness
was instructed to insert the names of the substitutes on the panel.
The regular jurors, who had employed the substitutes, were also
offered to prove the fact of substitution; but this testimony was
all excluded. It furnishes the key to the discrepancy between
the caption of the record and the *venire facias*, and shows be-
yond doubt the truth of the matter pleaded. We can see no
reason whatever, for its exclusion. True, it contradicts a recital
in record, but better evidence had been offered, to wit: The
*venire facias*, to prove that the recital of the record was not

true. The fact of its untruth being established, it was compe-
tent to show how the variance had occurred. An alteration had
been made in the panel, and from the panel so altered, the rec-
ord was made up. "It cannot be doubted," says Chief Justice
Parker, "that anything produced as a record may be shown to
be forged or altered; if it were not so great mischief might
arise. A record is conclusive evidence, but what is or is not a
record, is matter of evidence, and may be proved like other
facts; otherwise there would be no remedy." Brier v. Wood-
bury, 1 Pick. Rep., 362. We are not called on to say, whether
parol evidence in a case like this, may be introduced to falsify
the record. The proof in this instance tended only to account
for a discrepancy between different parts of the record. The
recital would have been shown to be untrue by the *venire*. A
question of power was raised, and the proof showed a want of
power in the court. The evidence was pertinent to the issue,
which was not an immaterial one. We have already decided
that the incompetency of the grand jurors is a matter, which
may be pleaded in abatement; and we conclude that this evi-
dence ought to have been admitted, as if true it defeated the
indictment. McQuillen v. The State, ante, 587.

It is agreed that there was another plea in abatement, which
averred the substitution of the grand jurors in the manner above
stated, to which a demurrer was sustained. This brings up
fairly the legality of the course pursued in taking substitutes for
part of the regular panel. In the case above referred to, it was
decided that the law must be followed in forming the grand
jury, and that an indictment found by an incompetent grand
jury may be quashed on plea. We will only add that there is
no law which authorizes the court to take substitutes for any
portion of the regular panel. If it can for one, it can for the
whole. It is useless to comment on the consequences which
might result; the effect would be to break down the provisions
of the law. In the case of Davis v. The Commonwealth, a re-
port of which was cited in Commonwealth v. Parker, 2 Pick.
Rep., 550, it was discovered, after a verdict of guilty against the
prisoner, that one Locke, who served on the grand jury, had not
been chosen a grand juror, but that the name of one Burr, who

had been chosen, had been erased from the return of the *venire,* and Locke's name inserted in its place. The court of common pleas arrested the judgment, and this decision seems to have met the approbation of the supreme court. This case is in point, and if it be right to arrest the judgment, surely it cannot admit of question, whether such matter is pleadable in abatement. The demurrer in this plea should have been overruled, and the judgment would then have been, that the prosecution should abate. Stephen on Pleading, 107. And as we are to give the judgment, which the court below should have given, that must be our judgment.